**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RICHARD SANCRUZADO, *individually and*
*on behalf of all others similarly situated*,

        Plaintiff,

v.

BARE KNUCKLE FIGHTING
CHAMPIONSHIP, INC.,

        Defendant.

_____/

**Case No.**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Richard Sancruzado brings this class action against Defendant Bare Knuckle Fighting Championship, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is a class action under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), arising from Defendant's practice of knowingly disclosing to Meta Platforms, Inc. ("Facebook"), information which identifies Plaintiff and the putative Class Members as having requested or obtained specific video materials or services from Defendant.

2.      The VPPA was enacted "'to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials….'" *Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017) (quoting *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015) (quoting 134 Cong. Rec. S5396-08, S. 2361 (May 10, 1988)).

3.    As alleged below, Defendant embedded within its website a "Meta Pixel" that was provided to Defendant by Facebook. That pixel tracked Plaintiff's and the Class Members' video viewing history while on Defendant's website and reported the viewing history to Facebook along with Plaintiff's and the Class Members' unique Facebook Identification numbers.

4.    Defendant knowingly violated the VPPA by embedding the Meta Pixel within its website and by sharing Plaintiff's and the Class Members' video viewing history.

5.    Defendant shared Plaintiff's and the Class Members' video viewing history without providing any notification to Plaintiff and the Class Members, and without Plaintiff's and the Class Members' informed, written consent.

6.    Defendant's unlawful conduct caused Plaintiff and the Class members concrete harm and injuries, including violations of their substantive legal privacy rights under the VPPA and invasion of their privacy. *See Perry*, 854 F.3d at 1340 ("We conclude that violation of the VPPA constitutes a concrete harm.") (citing *In re Nickelodeon*, 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information.")); *see also Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023) ("But the Constitution empowers Congress to decide what degree of harm is enough so long as that harm is similar in kind to a traditional harm.")

7.    Through this action, Plaintiff seeks actual damages but not less than liquidated damages in an amount of $2,500 for each and every violation of the VPPA committed by Defendant, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and any other available preliminary or equitable relief deemed appropriate by this Court.

## PARTIES

8.      Plaintiff is, and at all times relevant hereto was, a citizen and permanent resident of Miami-Dade County, Florida.

9.      Plaintiff is a "consumer" as defined by the VPPA in that Plaintiff is subscriber of goods or services provided by Defendant. *See* 18 U.S.C. § 2710(a)(1). Plaintiff has been a Facebook subscriber during the relevant time period. Additionally, Plaintiff has used a digital subscription to request, obtain, and/or view video content on Defendant's website while logged into the Facebook account.

10.      Defendant is, and at all times relevant hereto was, a foreign corporation, with its principal place of business located in Philadelphia, PA.

11.      Defendant is a "video tape service provider" because it is engaged in the business of delivering audio visual materials through its website and/or mobile application. *See* 18 U.S.C. § 2710(a)(4).

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Video Privacy Protection Act, 18 U.S.C. § 2710.

13.      This Court also has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Class (defined below) exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of Defendant.

14.      This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of Florida, and makes its active commercial website available to residents of Florida for those interested in entering into contracts

over the Internet with Defendant.  Indeed, Defendant's website allows residents of Florida to enter into transactions utilizing the website.  During the relevant time frame, Defendant entered into contracts with residents of Florida that involved the knowing and repeated transmission of computer data over the Internet.  This resulted in Defendant accepting benefits from Florida residents through the site. Plaintiff's and the Class members' claims arise directly from Defendant's operation of its website.

15.     Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiff occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.  Thus, Defendant knew or should have known that it was causing harm to those individuals while they were in Florida such that it was foreseeable to Defendant that its conduct would harm Plaintiff and other similarly-situated individuals located in Florida.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

**FACTS**

17.     Defendant operates a website (www.bkfc.com) that offers prerecorded videos to individuals who subscribe to Defendant's services. Defendant's delivery of audio-visual materials on its website is not ancillary to its business. In other words, Defendant's business model is centered, tailored, and/or focused around providing audio-visual content. Accordingly, Defendant

is a "video tape service provider" because it is engaged in the business of delivering audio visual materials.

18.     Plaintiff is a "consumer" as defined by the VPPA in that Plaintiff is subscriber of goods or services from Defendant. Specifically, Plaintiff became a digitial subscriber by registering for an account with Defendant and providing personal identifying information at the time of registration.

19.     At the time of registration, on information and belief, Plaintiff provided and Defendant captured Plaintiff's IP address, which is a unique number assigned to all information technology connected devices, that informed Defendant as to Plaintiff's city, zip code, and physical location.

20.     Plaintiff's registration reflected a commitment by Plaintiff and granted Plaintiff access to restricted video content offered by Defendant.

21.     Upon becoming a subscriber, Defendant grants access to a variety of prerecorded video and similar audio visual content.

22.     At all times relevant hereto, Plaintiff had a Facebook account. During the relevant time period, Plaintiff used their digital subscription to request, obtain, and/or view prerecorded video content on Defendant's website while logged into the Facebook account.

23.     Prior to the filing of this action, Plaintiff requested and/or viewed prerecorded video materials and/or services from Defendant through Defendant's website.

24.     Prior to the filing of this action, Defendant embedded and deployed a "Meta Pixel" on its website.

25.     A Meta Pixel is a snippet of JavaScript code that loads a small library of functions that a website/application operator like Defendant can use to track visitor activity on its website

and mobile application, including each website page visited, buttons clicked on the website, information inputted into a website, and content viewed on the site.

26.     The Meta Pixel relies on Facebook cookies, and enables Facebook to match a website visitor (i.e., Plaintiff and the Class Members) to their respective Facebook User account via their Facebook ID ("FID").  In other words, a FID is a unique identifier that is enough, on its own, to identify a person, and an ordinary person with access to a user's FID can locate, access, and view a user's corresponding Facebook profile by simply appending the FID to www.facebook.com (i.e., www.facebook.com/[FID]).

27.     More importantly, Facebook, using a FID, is able to identify any user on its platform, which in turn allows Facebook to discern personal and identifying information about the user because Facebook requires personal identifying information to open a Facebook account including, but not limited to, name, e-mail address, mobile phone number, date of birth, and gender; information that Plaintiff provided to Facebook.

28.     Facebook refers to the information it receives from outside website operators through the Metal Pixel as "Off-Facebook activity". Notably, the Meta Pixel constantly transmits a consumer's website activities to Facebook even if the Facebook application is running in the background of the consumer's computer.

29.     When it installed the Metal Pixel, Defendant chose certain options from a menu of available "events" that track specific user activity for automatic disclosure to Facebook, including the visitor's FID.

30.     Defendant chose for its website to disclose to Facebook unencrypted FIDs that allow Facebook to identify any user on its platform along with specific video titles and the videos'

URLs identifying specific prerecorded videos Plaintiff and the Class Members requested or obtained while visiting Defendant's website.

31.     Specifically, Defendant disclosed to Facebook the following information related to Plaintiff and the Class Members: whether a video was requested and/or viewed on Defendant's website; the specific video name that was requested and/or viewed; the fact that a specific video was requested and/or viewed; the URL associated with the video, and the digital subscriber's FID to Facebook, all in a single data transmission (collectively, "Personally Identifiable Information").

32.     The Meta Pixel is not necessary to Defendant's operation of its website, and Defendant did not need to configure the Meta Pixel to transmit Personally Identifiable Information to Facebook.

33.     Even if the Meta Pixel were somehow necessary, Defendant did not need to transmit Personally Identifiable Information to Facebook to operate its website or business.

34.     Plaintiff and the Class members did not have a reasonable opportunity to discover Defendant's unlawful conduct and violations of the VPPA because Defendant did not disclose to Plaintiff and the Class Members that it was sharing their Personally Identifiable Information with Facebook, nor did Defendant seek written consent from Plaintiff and the Class members prior to interception of their communications.

35.     Defendant did not inform Plaintiff and the Class Members that their Personally Identifiable Information would be shared with Facebook.

36.     Defendant did not obtain Plaintiff's and the Class Members' informed, written consent to share their Personally Identifiable Information with Facebook.

37.     Defendant failed to obtain Plaintiff's and the Class Members' written consent to share their Personally Identifiable Information in a form distinct and separate from any form

setting forth other legal or financial obligations of Plaintiff and the Class Members, as the VPPA requires.

38.      Defendant failed to provide Plaintiff and the Class Members with the opportunity, in a clear and conspicuous manner, to prohibit the disclosure of their Personally Identifiable Information.

## CLASS ALLEGATIONS

### PROPOSED CLASS

39.      Plaintiff brings this lawsuit as a class action on behalf of all other similarly situated persons pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rule of Civil Procedure. The "Class" that Plaintiff seeks to represent is defined as:

> **All persons in the United States: (1) who were registered users and/or subscribers of any website, mobile application, and/or video-on-demand service or application owned, controlled, and/or operated by Defendant; (2) who requested, obtained, and/or viewed any prerecorded video or similar audio visual materials on said website, mobile application, and/or video-on-demand service or application; and (3) whose Personally Identifiable Information was disclosed by Defendant to Facebook via the Meta Pixel.**

40.      Defendant and its employees or agents are excluded from the Class.

41.      Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

42.      The applicable statute of limitation is tolled by virtue of Defendant's knowing and active concealment of the facts alleged above. Plaintiff and Class Members did not have a reasonable opportunity to discover the information essential to the pursuit of these claims, without any fault or lack of diligence on their own part.

### NUMEROSITY

43.     The Class members are so numerous that individual joinder of all Class members is impracticable. Plaintiff is informed and believes that there are tens of thousands of subscribers that fall within the Class and who widely dispersed throughout the United States.

44.     Identification of the Class members is a matter capable of ministerial determination from Defendant's and/or Facebook's records kept in connection with its unlawful interceptions.

### COMMON QUESTIONS OF LAW AND FACT

45.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> (1) Whether Defendant knowingly disclosed Plaintiff's and the Class Members' Personally Identifiable Information to Facebook;
>
> (2) Whether Defendant secured consent from Plaintiff and the Class Members to disclose their Personally Identifiable Information to Facebook;
>
> (3) Whether Plaintiff and the Class Members are entitled to damages; and
>
> (4) The amount of actual or liquidated damages to which Plaintiff and the Class Members are entitled.

46.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely shares Personally Identifiable Information without securing written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

47.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

48.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## SUPERIORITY

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are potentially in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

50.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## REQUIREMENTS OF FED. R. CIV. P. 23(b)(2)

51.     Defendant has acted and refused to act on grounds generally applicable to the Class by engaging in a common course of conduct of uniformly sharing Personally Identifiable

Information without consent, thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole.

## COUNT I
## Violation of the VPPA, 18 U.S.C. § 2710
### (On Behalf of Plaintiff and the Class)

52.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

53.     Under the VPPA, a "video tape service provider" is prohibited from knowingly disclosing "personally identifiable information" concerning any consumer to any third-party without the "informed, written consent…of the consumer[.]" 18 U.S.C. § 2710(b).

54.     "[P]ersonally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3)

55.     Plaintiff and the Class Members are "consumers" as defined by the VPPA in that they are subscribers of goods or services offered by Defendant. *See* 18 U.S.C. § 2710(a)(1).

56.     Defendant is a "video tape service provider" because it is engaged in the business of delivering audio visual materials through its website and/or mobile application. *See* 18 U.S.C. § 2710(a)(4).

57.     In violation of the VPPA, Defendant knowingly embedded the Meta Pixel on its website and disclosed Plaintiff's and the Class Members' Personally Identifiable Information to Facebook.

58.     Specifically, Defendant disclosed to Facebook the following Personally Identifiable Information: whether a prerecorded video was requested and/or viewed on Defendant's website; the specific prerecorded video name that was requested and/or viewed; the fact that a specific prerecorded video was requested and/or viewed; the URL associated with the video, and the digital subscriber's FID to Facebook in a single transmission, all in a single transmission.

59.     Defendant knew that it was disclosing to Facebook data and information that identified Plaintiff and the Class Members as having requested or obtained specific prerecorded video materials from Defendant.

60.     As set forth in 18 U.S.C. § 27109(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner.

61.     Defendant failed to obtain Plaintiff's and the Class Members informed, written consent to disclose their Personally Identifiable Information to Facebook.

62.     Additionally, the VPPA creates an opt-out right for consumers. It requires entities like Defendant to "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(2)(B)(iii).

63.     Defendant failed to provide Plaintiff and the Class Members an opportunity, in a clear and conspicuous manner, to prohibit the disclosure of their Personally Identifiable Information.

64.     By disclosing Plaintiff's and the Class Members' Personally Identifiable Information, Defendant violated Plaintiff's and the Class Members' statutorily protected privacy rights.

65.     As a result of the above violations, Defendant is liable to the Plaintiff and the Class Members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for liquidated damages not less than $2,500 per Class Member. Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of Plaintiff and the Class Members, prays for the following relief:

a.      An order certifying the Class and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

b.      A declaration that Defendant's practices described herein violate the VPPA;

c.      An award of actual damages or, to the extent actual damages are lower than $2,500, liquidated damages in an amount of $2,500 per violation to Plaintiff and each Class Member;

d.      An award of punitive statutory damages to be determined at trial;

e.      An award of reasonable attorney's fees and costs; and

f.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## EVIDENCE PRESERVATIOND DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist it in disclosing Plaintiff's and the Class Members' Personally Identifiable Information to Facebook.

Dated: December 9, 2023

Respectfully submitted,

By:

**LAW OFFICES OF JIBRAEL S. HINDI**

*/s/ Jibrael S. Hindi*
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
305.336.7466

14

**EISENBAND LAW. P.A.**

/s/ Michael Eisenband
Michael Eisenband
Florida Bar Number 94235
515 E las Olas Blvd. Ste 120,
Fort Lauderdale, FL 33301
MEisenband@Eisenbandlaw.com
954-533-4092
*Counsel for Plaintiff and the Class*